IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PSN ILLINOIS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No.  04 C 7232 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| IVOCLAR VIVADENT, INC.; DENTSPLY ) | |
| INTERNATIONAL, INC.; DEN-MAT ) | |
| CORPORATION; MICRO DENTAL ) | |
| LABORATORIES; NATIONAL DENTEX ) | |
| CORPORATION; and KNIGHT DENTAL ) | |
| STUDIO, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| IVOCLAR VIVADENT, INC., ) | |
| ) | |
| Counterclaimant and Third ) | |
| Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| PSN ILLINOIS, INC., ) | |
| ) | |
| Counterclaimant-defendant, ) | |
| ) | |
| and ) | |
| ) | |
| GERALD G. MCLAUGHLIN, ) | |
| ) | |
| Third-Party Defendant. ) | |

1

## MEMORANDUM OPINION AND ORDER

Plaintiff PSN Illinois, Inc. ("PSN") filed a complaint against fourteen defendants[1] on November 10, 2004, alleging infringement of patent number 4,579,530 ("'530 patent") entitled "Fabrication of Porcelain Restorations." The '530 patent claims methods for making dental porcelain veneers. On December 6, 2004, Ivoclar filed its answer and counterclaim against PSN seeking a declaratory judgment of patent invalidity. On June 9, 2005, PSN filed an amended complaint. On July 7, 2005, defendant Ivoclar Vivadent, Inc. ("Ivoclar") filed an answer to the amended complaint, including a two-count amended counterclaim against PSN and Dr. Gerald G. McLaughlin ("McLaughlin"), the named inventor of the '530 patent. Count I of the amended counterclaim seeks a declaration of noninfringement, invalidity, and unenforceability. Count II alleges patent misuse, unfair competition, and deceptive trade practices. PSN has moved pursuant to Fed. R. Civ. P. 12(b)(6) to strike and dismiss Count II of Ivoclar's counterclaim and third party complaint against McLaughlin. For the reasons discussed below, the court denies in part and grants in part PSN's motion to strike and grants PSN's motion to dismiss.

## FACTS[2]

The following is a brief recitation of facts necessary for the adjudication of PSN's motion to dismiss Count II of Ivoclar's counterclaim only.

---

[1] Eight of the original defendants are no longer parties to the instant action.

[2] For the purposes of a motion to dismiss, the court accepts all well-pleaded allegations as true and draws all reasonable inferences in favor of the plaintiff. Travel All Over the World, Inc. v. Kingdom of Saudi Arabia, 73 F.3d 1423, 1428 (7th Cir. 1996).

PSN is an Illinois corporation, and the owner of the '530 patent. Ivoclar is a Delaware corporation that manufactures materials used to fabricate porcelain veneer restorations, including those sold under the "Empress" trade name. The '530 patent was issued April 1, 1986. Reexamination Certificate BI 4,579,530 was issued 11, 1989. The '530 patent expired November 21, 2004.

In its answer and amended counterclaim Ivoclar alleges on information and belief that the method of fabricating porcelain veneer restorations claimed in the '530 patent was developed in whole or in substantial part by Roger Sigler ("Sigler") and/or others associated with Myron's Dental Laboratories ("Myron's") in late 1982 or early 1983.

McLaughlin filed applications for the '530 patent with the United States Patent and Trademark Office ("PTO") on November 21, 1984, and the patent was issued on April 1, 1986. Ivoclar alleges on information and belief that McLaughlin knew at the time he filed the applications for the '530 patent that he was not the sole inventor of the porcelain veneer restorations, and that the method was being used commercially more than a year prior to the filing of his patent application. Ivoclar also alleges that on August 12, 1988, McLaughlin, as president of Yukiyo, Ltd. ("Yukiyo"), PSN's predecessor-in-interest and assignee of the '530 patent, filed a verified statement with the PTO falsely claiming small entity status.[3]

On October 11, 2004, PSN filed a certificate of correction with the PTO on behalf of McLaughlin seeking to correct claim 1 of the '530 patent. The PTO denied the request for a certificate of correction on December 2, 2004. On November 2, 2004, PSN acquired the entire

---

[3] For the purposes of charging reduced fees to patent holders, the PTO rules define a "small entity" as a small business concern, independent inventor, or non-profit organization. 37 C.F.R. § 1.9(f).

3

right, title and interest in and to the '530 patent from McLaughlin and Yukiyo. On November 9, 2004, PSN filed its complaint in the instant action.

## LEGAL STANDARD

In ruling on a motion to dismiss for failure to state a claim, the court considers "whether relief is possible under any set of facts that could be established consistent with the allegations." Bartholet v. Reishauer A.G., 953 F.2d 1073, 1078 (7th Cir. 1992). A complaint should not be dismissed for failure to state a claim unless there is no doubt that the plaintiff cannot prove a set of facts that would entitled her to relief based on her claim. Pressalite Corp. v. Matsushita Electric Corp. of America, 2003 WL 1811530, at *2 (N.D.Ill. Apr. 4, 2003). The purpose of a motion to dismiss is to test the sufficiency of the complaint, not to decide its merits. See Gibson v. City of Chicago, 910 F.2d 1510, 1520 (7th Cir. 1990).

## DISCUSSION

Ivoclar's amended counterclaim is asserted against PSN and McLaughlin, and seeks dismissal of PSN's claims, a declaration of non-infringement and patent invalidity, and damages. Count II of Ivoclar's amended counterclaim asserts a claim for "patent misuse, unfair competition, and deceptive trade practices." In addition to lumping three distinct causes of action into a single count, Count II does not reference a particular law or statute. PSN argues that Count II should be dismissed because patent misuse is an affirmative defense, not a counterclaim, and because Ivoclar has failed to state a claim for unfair competition or deceptive trade practices.

4

I.  **Motion to strike amended counterclaim and third party complaint**

PSN asserts that under Fed. R. Civ. P. 15(a), Ivoclar was required to obtain leave to amend its counterclaim because PSN had filed a responsive pleading, its reply to Ivoclar's counterclaim, on December 20, 2004. Rule 15(a) provides, "A party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served... . Otherwise, a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires." Ivoclar responds that leave was not required because Rule 15's reference to "pleadings" does not apply to a counterclaim.[4]

The decision to grant a Rule 15(a) motion for leave to file an amended pleading is a matter "purely within the sound discretion of the district court" and shall be freely given when justice so requires. J.D. Marshall Int'l, Inc. v. Redstart, Inc., 935 F.2d 815, 819 (7th Cir. 1991); Fed. R. Civ. P. 15(a). PSN does not argue that it was prejudiced by the amended counterclaim or that it was made for an improper purpose. Accordingly, although the better practice would have been for Ivoclar to seek leave to file, the court grants Ivoclar leave to file its amended counterclaim instanter, and denies PSN's motion to strike the amended counterclaim.

PSN also argues that Ivoclar required leave under Rule 14 to add McLaughlin as a party to the lawsuit, and that his addition on July 7, 2005, was untimely because expert reports are due September 30, 2005. In addition, PSN asserts that McLaughlin is not a proper party because he is not the owner of the '530 patent, and that Ivoclar's claims against him for allegedly

---

[4]Ivoclar is wrong. See, e.g., Fed. R. Civ. P. 8(c). A counterclaim is clearly a pleading.

5

participating in the lawsuit, including by signing interrogatories and being designated as a witness, are frivolous.

In the instant case, Ivoclar refers to McLaughlin in the amended counterclaim as a "third party defendant," but in its response Ivoclar argues that Rule 14 does not apply because it seeks damages from McLaughlin for independent wrongs. Indeed, a proper third party complaint under Rule 14 would allege that if Ivoclar loses, McLaughlin is responsible for all or part of Ivoclar's liability to PSN. Because this is not what Ivoclar claims, McLaughlin cannot be added as a third party defendant. In addition, as discussed below, because Count II of the counterclaim (the only count alleging a claim against McLaughlin) fails to state a claim, the court dismisses McLaughlin from this action.

## II. Patent misuse

The Federal Circuit held in B. Braun Medical, Inc. v. Abbott Labs, 124 F.3d 1419, 1427 (Fed. Cir. 1997), that patent misuse could not be brought as a claim for damages because it is an affirmative defense. The Braun court held that monetary damages may not be awarded under a declaratory judgment counterclaim based on patent misuse "because patent misuse simply renders the patent unenforceable... . In other words, the defense of patent misuse may not be converted to an affirmative claim for damages simply by restyling it as a declaratory judgement counterclaim." 124 F.3d at 1428. Other courts have relied on Braun to dismiss counterclaims for patent misuse. See, e.g., Bernhardt L.L.C. v. Collezione Europa USA, Inc., 2002 WL 1602447, at *2 (M.D.N.C. July 3, 2002); see also, Depuy Inc. v. Zimmer Holdings, Inc., 343 F. Supp. 2d 675, 684 n. 4 ("patent misuse is an affirmative defense, not a counterclaim") (citing Braun).

In the instant case, as in Braun, Ivoclar's counterclaim repeats its affirmative defenses and seeks declaratory relief and damages. Ivoclar devotes one paragraph only in its response to its patent misuse counterclaim, and appears to concede that it is not viable. Accordingly, the court grants PSN's motion to dismiss Count II of Ivoclar's amended counterclaim to the extent that it attempts to state a claim for patent misuse.

### III.  Unfair competition

Count II of Ivoclar's amended counterclaim does not identify a statutory basis for its unfair competition claim, but Ivoclar clarifies in its response to the motion to dismiss that it brings the claim under § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a)(1), and under Illinois statutory and common law. Ivoclar's claims are based on: (1) PSN's lawsuits against Ivoclar and its customers, consumers of Ivoclar's Empress ingots; and (2) PSN's alleged misrepresentations to the PTO. PSN argues that neither the filing of a patent infringement lawsuit nor inequitable conduct before the PTO can form the basis of an unfair competition clam under any federal or state law. For the reasons stated below, the court agrees that Ivoclar has failed to state a claim for unfair competition.

Section 43(a) of the Lanham Act prohibits false designations of origin or false or misleading descriptions of goods or services that are likely to cause confusion. The Federal Circuit has held that obtaining a patent through inequitable conduct does not constitute a violation of § 43(a) and that "the established remedy for inequitable conduct is unenforceability of the patent." Pro-Mold and Tool Company, Inc. v. Great Lakes Plastics, Inc., 75 F.3d 1568, 1575 (Fed. Cir. 1996) (affirming dismissal of the defendant's counterclaim for unfair competition). As here, the defendant in Pro-Mold counterclaimed for unfair competition alleging

7

that the plaintiff violated federal antitrust law by filing an infringement suit on a patent it knew was invalid. Id. at 1571. Specifically, the defendant in Pro-Mold alleged that the plaintiff's failure to disclose prior art and a joint inventor to the PTO constituted unfair competition. Id.

The Pro-Mold court noted that "there are adequate remedies to deal with inequitable conduct when it is found. Resort to federal unfair competition law is not one of them." Id. at 1575. The Federal Circuit affirmed this holding in Zenith Electronics Corp. v. Exzec, Inc., 182 F.3d 1340 (Fed. Cir. 1999). "Pro-Mold tells us that the remedy under federal law available to a defendant who is made the subject of an infringement suit, when the defendant alleges that the suit is based on a patent procured through inequitable conduct in dealing with the Patent Office, is the traditional remedy of having the patent adjudge unenforceable, or perhaps, in appropriate circumstances, holding the patentee liable for an antitrust violation." Id. at 1349. Pro-Mold and Zenith are on all fours with the instant case, and preclude Ivoclar federal unfair competition claim based on PSN's alleged misrepresentations to the PTO.

PSN argues that the filing of a lawsuit also cannot form the basis of a § 43(a) claim. Ivoclar responds that it alleges bad faith, and that the Federal Circuit held in Zenith that false, marketplace statements of infringement, "if made in bad faith, are damaging to competition and are not the type of statements protected by the patent laws... [and] can be reached by § 43(a)." Zenith, 182 F.3d at 1354. In the instant case, Ivoclar alleges that PSN filed lawsuits against Ivoclar's customers in an attempt to coerce settlement, collect damages, and interfere with Ivoclar's business even though PSN knew that the '530 patent was invalid. Ivoclar has thus alleged that PSN acted in bad faith by filling the lawsuits. Ivoclar does not, however, allege that PSN made any marketplace statements outside of the litigation context.

8

The Zenith court specifically distinguished the facts before it from those in Pro-Mold and another unfair competition case, Concrete Unlimited Inc. v. Cementcraft, Inc., 776 F.2d 1537 (Fed. Cir. 1985). Pro-Mold and Concrete Unlimited dealt with threats of and actual infringement suits. In contrast, Zenith dealt with marketplace misconduct, in which the counter-plaintiff alleged that the counter-defendant misrepresented the scope of its patent to the counter-plaintiff's potential customers, and falsely stated that the counter-plaintiff was infringing. The Zenith court noted, "The gravamen of [the defendant's] claim is marketplace misconduct, not abuse of the administrative and judicial process." 182 F.3d at 1349. The Zenith court also noted that "the initiation of an infringement suit is clearly not covered by the text of § 43(a), while a communication to the customers of the accused infringer, in certain circumstances, may be." Id.

In the instant case, the gravamen of Ivoclar's counterclaim is abuse of the judicial process. Ivoclar's response brief fails to acknowledge the Zenith court's distinction between litigation and marketplace statements, and does not address the fact that § 43(a) does not apply to the filing of a lawsuit. For example, Ivoclar cites Mitsubishi Electric Corp. v. IMS Technology, Inc., 1997 WL 630187, at *8 (N.D.Ill. Sept. 30, 1997), in which the court held that allegations of bad faith infringement letters, which are specifically limited by the Lanham Act, stated a federal claim of unfair competition. In the instant case, Ivoclar does not allege infringement letters or other marketplace conduct, nor does Ivoclar argue that the filing of a lawsuit is equivalent to a marketplace statement. Accordingly, Ivoclar has failed to allege a § 43(a) violation.

Ivoclar argues that it has sufficiently alleged a claim for unfair competition under the Illinois Consumer Fraud and Deceptive Trade Practices Act ("Trade Practices Act"), 815 ILCS 505/2, and Illinois common law. PSN argues that the filing of lawsuits cannot form the basis of

an Illinois unfair competition claim, and that its statements in the course of litigation are protected by the litigation privilege.

Under Illinois law, the only causes of action that can arise from the wrongful filing of a lawsuit are malicious prosecution and abuse of process. Havaco of America, Ltd. V. Hollobow, 702 F.2d 643, 646 (7th Cir. 1983). Courts applying Illinois law have repeatedly dismissed unfair competition claims based on the allegedly improper use of litigation as a means of competition. See, e.g., Knoll Pharmaceuticals Co., Inc. v. TEVA Pharmaceuticals USA, Inc., 2001 WL 1001117, at *2 (N.D.Ill. Aug. 24, 2001); WorldCom, Inc. v. Transcend Allegiance, Inc., 1998 WL 111636, at *2 (N.D.Ill. Mar. 6, 1998); Harris Custom Builders, Inc. v. Hoffmeyer, 834 F. Supp. 256, 262 (N.D.Ill. 1993). In Doe v. Maywood Housing Authority, 1994 WL 521050, at *7 (N.D.Ill. Sept. 22, 1994), Judge Grady dismissed an unfair competition counterclaim and issued a rule to show cause against the lawyer who filed it, noting that "[a] reasonable prefiling inquiry into the law would have informed [the attorney] that his counterclaim in tort sounded in malicious prosecution, and that the tort of malicious prosecution required him to plead that the underlying case was terminated in his clients' favor." Ivoclar fails to cite an Illinois case in which an unfair competition claim was successfully based on the defendant's improper use of litigation as a means of competition.[5]

PSN argues that even if litigation against customers of a competitor could form the basis of an unfair competition claim, any statements made during the course of litigation, including

---

[5]Concrete Unlimited, 776 F.2d 1537 (Fed. Cir. 1985) and Dow Chemical Co. Exxon Corp., 139 F.3d 1470 (Fed. Cir. 1998), cited by Ivoclar in support of its argument that its state unfair competition claims are not preempted by federal law, addressed marketplace conduct only.

allegations of infringement, are protected by the litigation privilege. The "absolute litigation privilege affords immunity to attorneys (and other participants int the judicial process) from tort liability arising out of statements made in connection with litigation." Steffes v. Stepan Co., 144 F.3d 1070, 1074 (7th Cir. 1998); see also, Wilton Partners III, LLC v. Gallagher, 2003 WL 22880834, at *1 (N.D.Ill. Dec. 5, 2003) (absolute litigation privilege precludes claims based upon filing of an allegedly "baseless lawsuit" and serving a third party subpoena). Ivoclar does not address this issue. Ivoclar has failed, therefore, to state an Illinois claim for unfair competition based on PSN's filing of lawsuits.

Ivoclar also alleges that it has stated an Illinois unfair competition claim based on PSN's alleged misrepresentations to the PTO. Ivoclar fails, however, to allege that PSN's conduct before the PTO was intended to interfere with Ivoclar's expected business relationships with third parties, as required to state a claim for unfair competition under Illinois common law. See Zenith Electronics Corp. v. Exzec, 1997 WL 223067, at *6 (N.D.Ill. Mar. 27, 1997) (elements of common law unfair competition claim).

Accordingly, the court grants PSN's motion to dismiss Count II of Ivoclar's amended counterclaim to the extent that it attempts to state an unfair competition claim under either state or federal law.

### IV. Deceptive trade practices

Ivoclar clarifies in its response to the motion to dismiss that it brings its deceptive trade practices claim under the Illinois Uniform Deceptive Trade Practices Act ("Illinois Trade Practices Act"), 815 ILCS 510/2. The Illinois Trade Practices Act is violated when, "in the

11

course of his or her business, vocation, or occupation" a person "disparages the goods, services, or business of another by false or misleading representations of fact." 815 ILCS 510/2.

Ivoclar relies on Mitsubishi, 1997 WL 630187 (N.D. Ill. Sept. 30, 1997), in support of its argument. The Mitsubishi court held that a "bad faith assertion" of patent infringement to a competitor's customer constituted a violation of the Illinois Trade Practices Act. Id. at *7. Importantly, however, as discussed above, the Mitsubishi court was concerned with the defendant's threats of infringement suits and statements to consumers, competitors, and others that the plaintiff was infringing; these were not statements made in the judicial or administrative process. Ivoclar also cites Herman Miller, Inc. v. Teknion Furniture Systems, Inc., 1996 WL 341541, at *3 (N.D.Ill. Jun. 20, 1996), in which the court held that "bad faith assertions of patent infringement were intended to be actionable under the [Illinois Trade Practices Act]." The deceptive trade practices counterclaim in Herman Miller, however, was based on marketplace statements to potential customers about the existence of a patent infringement lawsuit, not the filing of the lawsuit itself.

In the instant case, Ivoclar does not allege that PSN made any disparaging comments outside of the litigation or administrative contexts. In fact, the only public statements that Ivoclar alleges PSN made regarding the Empress products is that they do not infringe, which clearly cannot be considered disparaging. Ivoclar fails, as it did regarding its unfair competition claim, to cite a single Illinois case in which a claim was successfully asserted on the ground that the filing of a lawsuit constituted a deceptive trade practice. Under Illinois law, as discussed above, alleged false statements of fact in judicial pleadings may form the basis of a malicious prosecution or abuse of process claim only. Ivoclar asserts neither type of claim. In addition,

the litigation privilege also precludes Ivoclar's deceptive trade practices claim based on statements made in the course of litigation. Even if statements made in the administrative context could form the basis for a claim under the Illinois Trade Practices Act, Ivoclar fails to allege that PSN's misrepresentations to the PTO disparaged Ivoclar or its products in any way.

Accordingly, the court grants PSN's motion to dismiss Count II of Ivoclar's amended counterclaim to the extent that it attempts to state a claim under the Illinois Trade Practices Act.

## CONCLUSION

For the reasons stated above, the court denies counter-defendant PSN's motion to strike Count II of the amended counterclaim, and dismisses McLaughlin from the action. The court grants PSN's motion to dismiss Count II of counter-plaintiff Ivoclar's amended counterclaim.

**ENTER:** **September 21, 2005**

Robert W. Gettleman
United States District Judge