

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PSN ILLINOIS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | No.  04 C 7232 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| IVOCLAR VIVADENT, INC.; DENTSPLY ) | |
| INTERNATIONAL, INC.; DEN-MAT ) | |
| CORPORATION; MICRO DENTAL ) | |
| LABORATORIES; NATIONAL DENTEX ) | |
| CORPORATION; and KNIGHT DENTAL ) | |
| STUDIO, INC., ) | |
| ) | |
| Defendants. ) | |
| ) | |
| IVOCLAR VIVADENT, INC., ) | |
| ) | |
| Counterclaimant and Third ) | |
| Party Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| PSN ILLINOIS, INC., ) | |
| ) | |
| Counterclaimant-defendant, ) | |
| ) | |
| and ) | |
| ) | |
| GERALD G. MCLAUGHLIN, ) | |
| ) | |
| Third-Party Defendant. ) | |

1

# MEMORANDUM OPINION AND ORDER

On November 9, 2004, plaintiff PSN Illinois, Inc. ("PSN") filed this action alleging infringement of patent number 4,579,530 ("'530 patent"), entitled "Fabrication of Porcelain Restorations." The '530 patent claims methods for making dental porcelain veneers. Plaintiff alleges that the Empress system produced by defendant Ivoclar Vivadent, Inc. ("Ivoclar") infringes the '530 patent, and that the other defendants, dental laboratories, contribute to the infringement by using the Empress system. Ivoclar has filed a motion for summary judgment under Fed. R. Civ. P. 56 on the its defenses of non-infringement and laches.

The issue of infringement is hotly contested. On September 27, 2005, at defendant's helpful suggestion, the court held a hearing to allow the parties to present their respective products and processes. The parties' able demonstrations and explanations were informative and professional, and will aid any necessary claim construction. If defendant establishes that plaintiff's claims are barred by laches, however, there will be no need to adjudicate infringement because the patent has expired. The court therefore bifurcates the issues of laches and infringement, and will hold a bench trial on the issue of laches prior to resolving the question of infringement.

# FACTS[1]

PSN is an Illinois corporation, and the owner of the '530 patent. Ivoclar is a Delaware corporation that manufactures materials used to fabricate porcelain dental veneer restorations, including those sold under the "Empress" trade name. The '530 patent was issued to Dr. Gerald G. McLaughlin ("McLaughlin"), the named inventor, on April 1, 1986. Reexamination Certificate BI 4,579,530 was issued July 11, 1989, which narrowed the scope of the patent claims to porcelain veneers specifically. The '530 patent expired November 21, 2004.

The process described by the '530 patent is a form of a technique that is commonly known in the industry as a "refractory" technique for creating porcelain dental veneers, which are attached to the surface of a tooth to replace lost tooth structure and/or enhance the aesthetic appearance. The patent describes a method of creating a veneer by brushing a liquid slurry made of porcelain powder and water onto a "statue" or model of a patient's tooth. The porcelain is hardened on the statue and the statue is removed by "eroding" by blasting it with glass beads, leaving the veneer. The process used by defendant's Empress products is commonly known in the industry as a "lost wax" or "pressable" technique.

On April 20, 1993, Dr. George W. Tysowsky ("Tysowsky"), defendant's vice president of research and development, gave a presentation at a conference held by the American Academy of Cosmetic Dentistry ("AACD"). The seminar was entitled, "Presenting IPS Empress: A New Ceramic Technology," and was described in the conference brochure as presenting a "a new

---

[1] Unless otherwise noted, the following facts, taken from the parties' L.R. 56.1 statements and attached exhibits, are not in dispute. The court notes that neither party tabbed the voluminous exhibits attached to the 56.1 statements, or even separated the exhibits with colored paper. As a result, it was difficult and time consuming for the court to locate documents cited by the parties.

3

ceramic technology and clinical technique associated with the preparation, lab fabrication, and cementation of the IPS Empress restoration." McLaughlin attended at least a portion of Tysowsky's presentation, and later wrote two letters to Tysowsky dated May 11, 1993, and September 4, 1993, stating that he "really enjoyed" the presentation and wanted to include it in an upcoming educational program that he was organizing.

Defendant asserts that after attending the AACD seminar, McLaughlin knew of defendant's Empress product "in detail." McLaughlin states that he heard Tysowsky discuss an Empress inlay[2], not an Empress veneer. McLaughlin denies that the AACD presentation was detailed, and that it did "not discuss the specific steps that a laboratory performs in fabricating a veneer." Defendant does not deny that Tysowsky did not demonstrate the process of fabricating an Empress porcelain inlay restoration provided to the AACD participants, but rather displayed a pre-fabricate inlay.

During discovery in the instant case, McLaughlin produced a manual from his records regarding Empress products that defendant claims was mailed to McLaughlin's home in 1994. The manual describes a "new pressed ceramic system" from Ivoclar, and the use of glass ingots. It states, "The base glass is melted, quenched, fried, ground, remelted, and tempered into homogenous glass ceramic that is pressed into ingots by the manufacturer and refired for construction of restoration veneers."

For a period of time the '530 patent was held by a company, Yukiyo, Ltd. ("Yukiyo"), of which McLaughlin was president. During the early to mid 1990s, Yukiyo asserted the '530

---

[2] Inlays are used to fill holes in teeth and are less complicated than monochromatic restoration veneers.

patent against approximately 27 dental laboratories. Yukiyo did not assert the patent against defendant or its Empress product. The cases were consolidated in In re Yukiyo Patent Lit. in the Northern District of California. The defendants challenged the validity of the patent under 35 U.S.C. § 102(b), arguing that the invention was described in a printed publication more than one year prior to the patent application. After the Yukiyo jury found the patent was not invalid, the district court determined it was invalid as a matter of law, but was reversed by the Federal Circuit. Yukiyo, Ltd. v. Watanabe, 1997 WL 327345, unpub. op. (Fed. Cir. 1997). The case was settled in 1999, prior to a second validity adjudication.

From approximately 1995 through 1997, McLaughlin and defendant engaged in intermittent discussions concerning licensing the '530 patent. McLaughlin traveled to defendant's plant in Buffalo, New York. During this time period, McLaughlin did not accuse the Empress product of infringement. Plaintiff asserts that defendant told McLaughlin on "several occasions that it did not need a license for his patent because its veneer restoration system was based on a completely different technology." McLaughlin testified that in December 1992 and in 1995 defendant told McLaughlin that the Empress system was different from the '530 patent method because Empress used different materials, including "liquid glass," and employed the "lost wax" method. McLaughlin asked defendant for copies of its Empress instructions, but defendant refused to provide them unless McLaughlin purchased an Empress system at a cost of approximately $10,000 to $20,000.

Plaintiff, McLaughlin's assignee, alleges that McLaughlin first became aware of defendant's infringement in October 2004, a month before the instant law suit was filed, when he visited defendant's website and viewed technical information concerning Empress, including its

5

manual, instructions, and other technical data that McLaughlin states that he had not previously seen. According to McLaughlin, the most significant discovery in October 2004 was that the ingot used by Empress, which defendant had previously said was a liquid glass, "was in fact porcelain powder pressed into the shape of an ingot." Plaintiff argues that deposition testimony of other people in the veneer industry demonstrates that "the veneer industry did not know that the Empress ingot was made of powder." Defendant argues that the information available on its website in 2004 was the same information contained in 1994 Empress manual produced from McLaughlin's files during discovery, and in Tysowsky's presentation to the AACD in 1993.

## SUMMARY JUDGMENT STANDARD

A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Unterreiner v. Volkswagen of America, Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(e); Becker v. Tenenbaum-Hill Associates, Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. See Fisher v. Transco Services-Milwaukee, Inc., 979 F.2d 1239, 1242 (7th Cir. 1992).

## DISCUSSION

Under 35 U.S.C. § 282, laches is an equitable defense that bars recovery by the plaintiff for any damages incurred before the initiation of the infringement suit. A.C. Aukerman Co. v. R.L. Chaides Constr. Co., 960 F.2d 1020, 1028 (Fed. Cir. 1992) (en banc). Laches requires proof

that the patentee unreasonably and inexcusably delayed filing suit and that the delay resulted in material prejudice to the defendant. Wanlass v. Gen. Elec. Co., 148 F.3d 1334, 1337 (Fed. Cir. 1998). A presumption of laches arises when more than six years has elapsed between the time the plaintiff knew or should have known of the alleged infringing activity and the time of filing suit. Aukerman, 960 F.2d at 1028. When the presumption is in effect, the court infers unreasonable delay and prejudice from the length of the delay, and the burden going forward with the evidence shifts to the plaintiff. Id. When the presumption does not arise, the party claiming laches bears the burden of proving that the delay was unreasonable and inexcusable, and that it materially prejudiced the party claiming laches. Id.

The issue of laches is committed to the sound discretion of the court. Aukerman, 960 F.2d at 1032. Because the nature of the laches defense is fact-intensive, summary judgment often will be inappropriate, but may be granted under some circumstances. Rockwell International Corp. v. SDL, Inc., 103 F. Supp. 2d 1192, 1196 (N.D. Ca. 2000) (denying summary judgment on laches defense); see also Wanlass v. Fedders Corp., 145 F.3d 1461, 1464 (Fed. Cir. 1998).

The period of delay begins at the time the patentee had actual or constructive knowledge of the defendant's potentially infringing activities. General Electric, 148 F.3d at 1337. Plaintiff filed the instant action November 9, 2004. Thus, to trigger the presumption, defendant must show the absence of genuine disputes on material issues as to whether plaintiff knew or should have known of the alleged infringement on or before November 9, 1999. Rockwell, 103 F. Supp. 2d at 1196. The parties do not suggest a hard and fast rule regarding the level of knowledge requisite to trigger laches, and the equitable nature of laches generally does not warrant mechanical rules. Id. at 1197; see also Aukerman, 960 F. 2d at 1034. The Rockwell court noted

7

that the plaintiff "must have had more than a mere suspicion but less than absolute assurance of defendant's alleged infringement in order to activate the laches clock." Id.

Defendant accuses McLaughlin and PSN of engaging in the type of "litigation game-playing" that the patent law of laches, particularly the six-year presumption, is meant to prevent. According to defendant, McLaughlin has had knowledge of defendant's alleged infringement since at least 1993, unreasonably delayed filing this action for nearly twelve years, and then, at the eleventh hour, assigned his patent to plaintiff in an attempt to allow plaintiff to exploit McLaughlin's invention but avoid the laches defense. Even assuming plaintiff and McLaughlin are playing such a "game," it does not change the laches analysis because plaintiff stands in McLaughlin's shoes with respect to the laches defense. A patentee "cannot avoid the consequences of his laches by transferring the patent, and a prior patent-holder's actions prior to an assignment are imputed to the assignee." Eastman Kodak Co. v. Goodyear Tire & Rubber Co., 114 F.3d 1547, 1559 (Fed. Cir. 1997).

If defendant is correct that McLaughlin knew or should have known of defendant's alleged infringement more than six years before plaintiff filed the instant lawsuit, a presumption of laches would arise and preclude the claims of plaintiff, McLaughlin's assignee. Plaintiff, however, asserts that McLaughlin did not know that the Empress product utilizes alleged porcelain powder, which is the focus of his infringement claim, until viewing defendant's website in 2004, a month before plaintiff filed the instant action. For the reasons discussed below, plaintiff has raised triable issues of material fact concerning when McLaughlin knew or should have known about defendant's alleged use of porcelain powder, and therefore the presumption does not apply.

8

Defendant's arguments equate McLaughlin's knowledge of the Empress product with his knowledge of its alleged use of porcelain powder. Defendant asserts, "All that matters is that Dr. McLaughlin knew of the Empress product in 1993." Knowledge of a product, however, does not automatically indicate actual or constructive knowledge of infringement. Courts, including several cited by defendant in support of other arguments, have repeatedly rejected the use of the laches defenses against patentees who were aware of an infringing product more than six years before filing suit, but were not aware of the infringement. See, e.g., Fedders, 145 F.3d 1461 (more than six years); Bingo Brain, Inv. v. California Concepts. Inc., 2001 WL 1631920 (N.D. Ill. Dec. 19, 2001) (eleven years); Rockwell, 103 F. Supp. 2d 1192 (ten years).

Courts impose a duty on patentees to police their rights. See General Electric, 148 F. 3d at 1338. The case law charges a patentee with such knowledge as it might have obtained on reasonable, diligent inquiry. See Id.; Rockwell, 103 F. Supp. at 1199. "If a patentee knows of the existence of a product or device that (i) embodies technology similar to that for which he holds a patent and (ii) uses that similar technology to accomplish a similar objective, he has a duty to examine the product or device more closely to ascertain whether it infringes his patent." Odetics, Inc. v. Storage Tech. Corp., 919 F. Supp. 911, 917-18 (E.D. Va. 1996) (vacated on other grounds). In the instant case, the question is whether McLaughlin knew or should have known that the Empress products allegedly infringe the '530 patent before November 9, 1999, six years before plaintiff filed the instant action.

Defendant argues that McLaughlin had sufficient knowledge of the Empress product to allege infringement prior to 1999 based on: (1) his attendance at the AACD conference in 1993, (2) defendant's manual regarding the Empress product mailed to his home in 1994; (3) his

discussions with defendant in the mid-1990s; and (4) the <u>Yukiyo</u> litigation in the mid-1990s. Plaintiff responds that McLaughlin did not have either constructive or actual knowledge that the Empress product "embodies technology similar" to the '530 patent until 2004, when he discovered that it uses what he alleges is a porcelain powder.

Plaintiff has raised questions of fact regarding each of these alleged sources of McLaughlin's knowledge. First, McLaughlin testified that the AACD presentation did not demonstrate the Empress process or provide any information, much less details, about Empress veneers. Neither the brochure nor McLaughlin's letters to Tysowsky, which merely compliment his presentation in general terms without referring to its substance, establish that the seminar included technical details about Empress veneers. Plaintiff has thus raised a triable issue of fact whether he knew or should have know of defendant's infringement based on the AACD conference.

Second, it is not clear at this point in the litigation that the manual contained sufficient information to alert McLaughlin to potential infringement. The manual states,

> The base glass is melted, quenched, dried, ground, remelted, and tempered into homogenous glass ceramic that is pressed into ingots by the manufacturer and refired for the construction of restoration veneers.

Defendant thus argues that by simply reading the manual in 1994, McLaughlin knew the precise information" that McLaughlin claims he needed to determine whether Empress infringed. The fact that the manual and the website were identical would be damaging to plaintiff's case because McLaughlin testified that the website information was sufficient for him to accuse defendant. Defendant, however, does not provide the court with a copy of the website or its text, and thus the court cannot resolve the issue on summary judgment. McLaughlin testified that his most

significant discovery in 2004, prompting the filing of the instant action, was that the Empress product uses "porcelain powder pressed into the shape of an ingot." Defendant does not argue, however, that "base glass" is equivalent to "porcelain powder," although the court notes that this was suggested by plaintiff at the hearing held on September 27, 2005, during which the parties demonstrated and explained the Empress and McLaughlin methods.

Defendant cites Odetics, Inc. v. Storage Technology Corp., 919 F. Supp. 911 (E.D. Va. 1996), in which the district court applied the six-year presumption, in support of its argument that after receiving the manual McLaughlin knew or should have known of the infringement. Odetics, however, is distinguishable because the patentee admitted that he was aware more than eight years before filing suit that the accused product included "similar technology" to the patent in suit. Id. at 917. In the instant case, McLaughlin vigorously denies that he knew or suspected prior to 2004 that the Empress product uses what plaintiff alleges is a porcelain powder.

Third, there are questions of fact regarding McLaughlin's discussions with defendant in the mid-1990s, which defendant suggests provided McLaughlin with sufficient knowledge to trigger the laches clock. Defendant suggests that McLaughlin discussed licensing the '530 patent to defendant, and notes that other courts have held that licencing negotiations support a finding that a patentee was on inquiry notice. See, e.g., Wanlass v. General Electric, 148 F.3d 1334, 1339 (Fed. Cir. 1998). Plaintiff, however, asserts that these conversations did not reveal or suggest defendant's use of porcelain powder, and that defendant falsely assured McLaughlin that the '530 patent did not infringe. Moreover, plaintiff claims that defendant stymied McLaughlin's attempts to learn more about the Empress product. See Potash Co. of America v. International Minerals & Chemical Corp., 213 F.2d 153, 155 (10th Cir. 1954) ("[I]f material facts are

11

concealed or misrepresented by a suspected wrongdoer, and if in reliance thereon the person wronged is deceived and his suspicions allayed for a while, a court of equity will not grant the wrongdoer any advantage resulting from the lapse of time."). Although McLaughlin's testimony suggests that he may have suspected infringement during this time period, mere suspicion is not sufficient to expose a patentee to a presumption of laches, Rockwell, 103 F. Supp. 2d at 1197, particularly in the face of alleged deception by the infringer. At the summary judgment stage, the court must read all evidence in the record in the light most favorable to the nonmovant. Abdullahi, 2005 WL 2179827, at *9.

Fourth, according to plaintiff, Yukiyo did not assert the '530 patent against defendant during the Yukiyo litigation because McLaughlin had no reason at that point to believe that the Empress product infringed. Defendant argues that Yukiyo effectively conceded that the Empress product did not infringe the '530 patent by distinguishing Empress from the products it accused of infringement, and by stating in correspondence with certain dental labs that the Empress product would not be asserted as an infringement of the '530 patent. Plaintiff responds that at that time, McLaughlin was not aware and had no reason to believe that the Empress product infringed. The prosecution history of the Yukiyo litigation, as presented by the parties, does not establish what McLaughlin knew or should have known about Empress, but only that he believed other methods - not Empress - infringed his patent.

Yukiyo's discovery responses and correspondence, as well as common sense and the rules of discovery, strongly suggest that McLaughlin investigated the Empress product before distinguishing it from the '530 patent, or at least that he was on inquiry notice. Porcelain powder, however, was not the subject of the Yukiyo litigation. The record does not establish

12

what, if any, inquiry McLaughlin conducted before stating that the products were distinguishable, or on what basis he believed that they were. Read in one light, McLaughlin's aggressive policing of his patent when he became aware of possible infringement undermines the argument he was aware of defendant's alleged infringement but simply chose not to prosecute. See Rockwell, 103 F. Supp. 2d at 1199 (patentee was less persistent than patentees in other cases who discharged their inquiry duty, but did not "sleep on its rights."). There is an alternate interpretation of the Yukiyo litigation, however, that favors defendant. It may be that McLaughlin was on notice of defendant's possible infringement during the Yukiyo litigation, but that he was either unable to pursue claims against defendant because of resource constraints or that he simply chose not to. Neither explanation would excuse McLaughlin's failure to police his patent if he was in fact on inquiry notice.

Defendant argues McLaughlin was on notice inquiry and thus had a duty to investigate. In support of its argument, defendant cites several cases in which the Federal Circuit affirmed a district court's grant of summary judgment based the six-year laches presumption. Several of these cases, however, are distinguishable because they involved "open" and "notorious" infringement, and products that were more easily testable. In Wanlass v. General Electric, 148 F.3d 1334, 1339 (Fed. Cir. 1998), for example, the court held that the patentee's claims were barred by laches because the defendant's "notorious sale of easily testable products," air conditioners, gave the patentee the opportunity to discover the alleged infringement earlier. Similarly, the court found that the patent at issue in Hall v. Aqua Queen Mfg., 93 F.3d 1548 (Fed. Cir. 1996), involved an easily testable product, a waterbed.

In the instant case, plaintiff argues that the Empress product was not so easily testable because the ingot's alleged powder composition is revealed only by microscopic examination, and that the law does not require such involved investigation by a patentee. IXYS Corp. v. Advanced Power Technology, Inc., 321 F. Supp. 2d. 1156, 1161 (N.D. 2004) (denying summary judgment on laches where technology made it necessary to "actually slice the device open and examine its component structure under a microscope."). In further support of its argument that the ingot's composition is difficult to discern, plaintiff asserts that the common belief in the industry remains that the Empress ingot is made of glass, not powder. See Imagexpo, L.L.C. v. MicroPSOFtCorp., 281 F. Supp. 2d 846, 850-51 (E.D. Va. 2003) (no laches where knowledge of defendant's source computer code, not generally known in industry, was needed to discern infringement). Indeed, even defendant's own witnesses admit that the ingot "obviously" appears to be comprised of something other than powder. Thus, plaintiff has at least raised questions of fact whether defendant's infringement was "open" and "notorious." Lastly, McLaughlin alleges that he received false assurances of non-infringement from defendant and that his attempts to gain more information on the Empress product were rebuffed by defendant.

Defendant has failed to show the absence of genuine issues of material fact whether McLaughlin knew or should have known of defendant's alleged infringement before November 9, 1999. Defendant suggests that plaintiff is "simply not being honest on the issue of his knowledge." The credibility of witnesses, however, cannot be resolved on summary judgment. Abdullahi v. City of Madison, 423 F.3d 762, 2005 WL 2179827, at *9 (7th Cir. 2005). Accordingly, the six-year presumption does not apply to the instant case.

Without the benefit of the six-year presumption, the burden remains on defendant to establish the absence of a disputed issue of material fact whether plaintiff's delay was unreasonable and inexcusable, and whether defendant suffered either economic or evidentiary prejudice that would have been avoided had plaintiff filed suit earlier. General Electric, 148 F.3d at 1337; Aukerman, 960 F.2d at 1028. Here, plaintiff has raised triable issues of material fact that it filed the instant action approximately one month after McLaughlin learned of the alleged infringement, and defendant does not argue that one month may be considered unreasonable or that such a short period caused it prejudice. The cases cited by defendant in support of its prejudice arguments are thus inapposite because those courts concluded that the plaintiff had delayed for a period of years. See HotWax, Inc. v. Turtle Wax, 191 F.3d 813, 824 (7th Cir. 1999); AptarGroup, Inc. v. Summit Packaging Systems, Inc., 1996 WL 114781 (N.D. Ill. March 14, 1996).

Plaintiff also argues that the court should deny the motion for summary judgment because defendant has failed to offer any evidence of either economic or evidentiary prejudice, as required to establish a laches defense. In particular, plaintiff argues that defendant fails to establish, or even claim, that its increased expenditures on the development and marketing of the Empress products were related to the alleged delay. See Hemstreet v. Computer Entry Sys. Corp., 972 F.2d 1290, 1294 (Fed. Cir. 1992) (nexus must be shown between the patentee's delay in filing suit and the expenditures; the alleged infringer must change his position "because of and as a result of the delay."). Plaintiff also asserts that defendant fails to establish that as a result of missing evidence, it cannot put on a fair defense. "Conclusory statements that there are missing witnesses, that witnesses' memories have lessened, and that there is missing documentary

15

evidence, is not sufficient." Myers v. Asics Corp., 974 F.2d 1304, 1308 (Fed. Cir. 1992). Because the court denies summary judgment on laches, it need not resolve the prejudice issue at this stage. The court notes, however, that these questions of disputed material fact regarding the prejudice element of the laches defense should be addressed during the bifurcated bench trial on laches, discussed below.

Accordingly, without the benefit of the six-year presumption and with disputed facts about prejudice, defendant has failed to establish the required elements of the laches affirmative defense. See Hemstreet v. Scan Optics, Inc., 1992 WL 368059 (N.D. Ill. Dec. 3, 1992) (denying summary judgment on laches because disputed issues regarding when the patentee knew or should have known of the infringement).

Whether the defense of laches applies is a legal or equitable question for the court. Town of Munster, Ind. v .Sherwin-Williams Co., Inc., 27 F.3d 1268, 1269 (7th Cir. 1994). Defendant suggests in its motion for summary judgment that if the court finds questions of material fact regarding laches, it may resolve those questions in a bench trial on laches only. Plaintiff does not respond to the suggestion, but the court agrees that given the time and expense required to litigate a patent infringement claim, a bench trial on laches before proceeding to issues on infringement is in the interest of both the parties and the court. See Aero Products Intern., Inc. v. Intex Recreation Corp., 2004 WL 1557942, at *1 (N.D. Ill. July 9, 2004) (jury trial held in patent case, but issue of whether defense of laches applies reserved for court's determination). The court will address laches, including: (1) if the six-year presumption applies; and (2) if the presumption does not apply, whether defendant has established prejudice.

## CONCLUSION

For the reasons stated above, the court denies defendant's motion for summary judgment on laches. A status hearing on this matter is set for October 24, 2005, at 9:00 a.m. The parties are directed to be prepared to discuss pretrial preparation for a bifurcated bench trial on laches, and to set a trial date.

**ENTER:** **October 10, 2005**

Robert W. Gettleman
United States District Judge