IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| PSN ILLINOIS, LLC | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 04 C 7232 |
| v. | ) | |
| | ) | Judge Virginia M. Kendall |
| IVOCLAR VIVADENT, INC.; DENTSPLY | ) | |
| INTERNATIONAL, INC.; DEN-MAT | ) | |
| CORPORATION; MICRO DENTAL | ) | |
| LABORATORIES; NATIONAL DENTEX | ) | |
| CORPORATION; and KNIGHT DENTAL | ) | |
| STUDIO, INC. | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM OPINION AND ORDER

Plaintiff PSN Illinois, LLC. ("PSN") has brought suit against Ivoclar Vivadent, Inc.
("Ivoclar"); Dentsply International, Inc. ("Dentsply"); Den-Mat Corporation ("Den-Mat"); Micro

Dental Laboratories ("Micro Dental"); National Dentex Corporation ("Dentex"); and Knight Dental

Studio, Inc. ("Knight") for infringement of patent number 4,579,530 ("the '530 Patent") regarding

porcelain tooth veneers.  On December 7, 2006, this Court issued a memorandum opinion and order

(the "Opinion")  granting Ivoclar's Motion for Summary Judgment of Non-Infringement.   Ivoclar

now moves this Court to reconsider its decision pursuant to Federal Rule of Civil Procedure 59.

Dentex, Micro Dental, and Knight move together for summary judgment of non-infringement on the

same grounds as Ivoclar, as does Dentex via separate motion.[1]  Because the Court considered PSN's

legal grounds for reconsideration as part of the Opinion, PSN's Motion for Reconsideration is

---

[1]Dentsply and Den-Mat move for summary judgment on grounds distinct from those argued by Ivoclar, and
Dentex moves for summary judgment on the same grounds as Dentsply and Den-Mat. In order to avoid confusion, the
Motions filed by Dentsply and Den-Mat (and their impact on Dentex) will be addressed in a separate opinion.

denied. Per the stipulation by PSN that Dentex, Micro Dental, and Knight use the same process as Ivolar, the Motion of Dentex, Micro Dental, and Knight for summary judgment as to non-infringement is granted, and Dentex's motion is granted as relates to Ivoclar's process.

Discussion

In the Opinion, the Court construed the phrase "ready for mounting" in Claim 1 of the '530 Patent to mean, as proposed by Ivoclar, "leaving the veneer restoration ready to be fitted to and cemented on a patient's tooth for which it was custom-made." Opinion at 10. On the basis of the construction of the phrase "ready for mounting," the Court granted summary judgment for Ivoclar after finding that no reasonable jury could conclude that Ivoclar's manufacturing process left the tooth veneer ready for mounting after the investment material had been removed.

As part of the claim construction portion of the Opinion, the Court noted that PSN did not provide a proposed construction counter to that provided by Ivoclar. PSN brings to the Court's attention that PSN provided the Court with a proposed construction as part of its Local Rule 56.1 Additional Statement of Material Facts. PSN does not dispute that it did not discuss or argue its proposed construction in its Opposition to the Motion for Summary Judgment, although it added a citation to the statement of fact that contained the construction. PSN also briefly referenced its proposed construction in its Response to Ivoclar's Short Supplement to its Motion for Summary Judgment. PSN's proposed construction for "ready for mounting" is: "the statue has been eroded from the veneer and is substantially fabricated other than finishing and fitting operations required for its placement on the tooth."

While the Court admits that it overlooked PSN's proposed construction and will address that proposed construction on its merits as part of this opinion, it bears mention that PSN is not entirely

blameless for the error.[2]   Claim construction is a matter of law; proposed claim constructions are not material facts and are inappropriate for placement in a Local Rule 56.1 statement.  *See Kenall Mfg. Co. v. Genlyte Thomas Group LLC*, 439 F. Supp. 2d 854 (N.D. Ill. 2006) (legal conclusions regarding infringement and claim construction arguments do not comply with Local Rule 56.1).  This Court is obligated under Local Rule 56.1 not to consider legal arguments and conclusions of law that parties place in their statements of undisputed facts.   In both the Opposition and Response to Supplement briefs, PSN made the strategic decision to focus its argument on the reasons that Ivoclar's proposed construction should not be used rather than providing support for its own proposed construction.

Because the Court overlooked the presence of a proposed construction, however improperly stated, the Court will re-address the claim construction on the merits.   In the Opinion, the Court adopted Ivoclar's revised construction of "ready for mounting":

> Leaving the veneer restoration ready to be fitted to and cemented on a patient's tooth for which it was custom-made.

PSN's proposed construction for "ready for mounting" is:

> the statue has been eroded from the veneer and is substantially fabricated other than finishing and fitting operations required for its placement on the tooth.

The major difference in the two proposed constructions is the presence of the term "finishing" as a separate step from "fitting" that should be included in the construction of "ready for mounting." While the Opinion did not have the benefit of PSN's proposed language, the Opinion did analyze and conclude on the basis of the specification in the '530 Patent that "ready for mounting" did not

---

[2] Ivoclar also apparently missed the proposed construction in PSN's 56.1 Statement of Additional Facts. Ivoclar stated in its Reply to the Motion for Summary Judgment that PSN had not provided a proposed construction.  Reply Mem. in Support of Summary Judgment at 8 (Docket No. 248).

include finishing steps. The Opinion specifically addressed the types of activities that PSN raises in its Motion for Reconsideration as "finishing" steps, including beveling, shaping, and glazing. Therefore, although PSN argues that it has been prejudiced by the Court's failure to consider PSN's proposed construction, the Court did discuss the finish steps and determine that the claim construction should not include them - the key difference in construction language that PSN proposed.

The Opinion also explained the reasoning behind the Court's decision that "finishing" could not be included in the phrase "ready for mounting." While PSN chose to phrase its arguments on summary judgment as arguments against Ivoclar's construction (rather than in favor of its own construction), PSN made the same legal arguments in briefing that it now makes on reconsideration; the Opinion addressed those arguments and ruled against PSN. For the sake of completeness, those arguments are addressed again in brief.

First, PSN argues that a claim construction that does not cover the description in the summary of the invention is "rarely, if ever, correct." But PSN draws this quote from a case discussing the preferred embodiment, not the summary of the invention. That case, *Globetrotter Software, Inc. v. Elan Computer Group, Inc.*, 362 F.3d 1367, 1381 (Fed. Cir. 2004), states that "a claim interpretation that excludes a preferred embodiment from the scope of the claim 'is rarely, if ever, correct.'" The preferred embodiment in the '530 Patent would be excluded if PSN's proposed construction were to be adopted, the position that these exact cases counsel to be an incorrect result. PSN's proposed construction states that finishing will take place after the statue is removed, while the preferred embodiment states that "the support provided by the statue with the casing still

4

mounted while such treatment is conducted is a feature of this invention." '530 Patent, Col. 4, ll. 43-46.

Ivoclar's proposed construction is consistent with the preferred embodiment, but PSN's proposed construction would exclude, or at very least ignore, the inventor's statement in the preferred embodiment that the support provided during finishing treatment has significance in the invented process because it provides a structure during the finishing steps. The inventor's statement is not an expression of an option, or a suggestion of one method among many. The sentence describes a "feature" of the inventor's process. A description in the specification that specifically notes a feature of the invention can inform the Court of the proper construction of a claimed term. *See Boss Control, Inc. v. Bombardier, Inc.*, 410 F.3d 1372 (Fed. Cir. 2005) (where the specification limited a term to a process involving two steps in order, claim would not be construed broadly to allow for any step); *Inpro II Licensing, S.A.R.L. v. T-Mobile USA, Inc.*, 450 F.3d 1350, 1355 (Fed. Cir. 2006) (limiting a claim for an interface to a specific type of interface because the preferred embodiment specified it was an "important feature" and explained the purpose behind that feature). To construe the phrase "ready for mounting" to allow finishing after the investment material has been removed would be to ignore an aspect of the invention that the inventor himself felt important enough to highlight as one of the invention's features. This statement may be present in the preferred embodiment, but that alone does not allow the Court to ignore its implications.

Contrary to PSN's position, construing the claim "ready for mounting" to exclude finishing steps does not necessarily result in a complete exclusion of the summary of the invention. The Summary of the Invention describes single or double baking the veneer on the statue, allowing the statute to cool, and then removing the statue from the veneer. *See* '530 Patent, Col. 2, ll. 40-53. In

the next paragraph, the summary describes touching up, smoothing, and possibly glazing the veneer

casing "produced by either the single or double bake process. Col. 2., ll. 54-56. The description

of these steps follows the description of removing the investment material in the summary

description, but do not dictate that the touching up necessarily follows the removal. The Summary

is not clear on the sequence of removing the statue vis-a-vis finishing, but the preferred embodiment,

as discussed above, is clear that the sequence of events is significant. Additionally, the prosecution

history of the '530 Patent supports the statement in the Preferred Embodiment, and the Opinion's

finding, that "ready for mounting" allows for fitting and cementing steps, but not for the finishing

steps such as smoothing and glazing. In its brief appealing the results of a reexamination of the '530

Patent, Yukiyo (then the assignee of the '530 Patent) argued that the patented process smoothed and

glazed the veneers prior to erosion of the investment material, consistent with the description in the

preferred embodiment. *See* Def. Ex. 26 at 8-9.

Second, PSN argues that the Court should have recognized the ambiguity in the '530 Patent

and relied upon the extrinsic evidence provided in the form of affidavits from experts Dr. Gerald

McLaughlin (the inventor of the '530 Patent) and David Andrus, and that PSN suffered prejudice

from the Court's failure to consider these expert affidavits. As explained above, the Court

overlooked the single statement of material fact that contained PSN's proposed construction. But

the Court reviewed the statement of material facts and the exhibits attached to the statement of fact,

including the often-referenced affidavits of McLaughlin and Andrus. Contrary to PSN's assertions,

PSN was not deprived of review of the testimony of those of "ordinary skill in the art." This

testimony is part of the record and was reviewed prior to publication of the Opinion. The Court did

not choose to rely on the extrinsic evidence of expert testimony because the claims could be

construed on the basis of the intrinsic evidence found in the language of the claims themselves and in the patent specification. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1317 (Fed. Cir. 2005) (in construing claims, expert testimony is "less significant than the intrinsic record in determining the legally operative meaning of claim language") (internal citations omitted). Extrinsic opinions from experts can help clarify the meaning of terms and can educate a court on the technology at issue in the case, but its use in construing claims is within the sound discretion of the court. *See Inpro II*, 450 F.3d at 1357.

Based on the intrinsic evidence alone, reading the phrase "ready for mounting" to include finishing steps would have the effect of reading out a feature of the preferred embodiment - a situation which case precedent counsels to be an inappropriate outcome. Therefore, the construction of the phrase "ready for mounting" in Claim 1 of the '530 Patent remains, as it was in the Opinion, "leaving the veneer restoration ready to be fitted to and cemented on a patient's tooth for which it was custom-made."

## Conclusion

Because the previous Opinion addressing the construction of the claims in the '530 patent did not err as a matter of law, PSN's Motion for Reconsideration [407] is denied and the Court's previous Opinion granting summary judgment in favor of Ivoclar stands. By stipulation, the Motion of Dentex, Knight, and Micro Dental for Summary Judgment on grounds that Ivoclar's process does not infringe the '530 Patent [445] is granted.

_____
Virginia M. Kendall, United States District Judge
Northern District of Illinois

Date: May 29, 2007